UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

GARY LEE COURTNEY, JR., #253078,　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　　　)　　Case No. 1:07-cv-1130
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　Honorable Janet T. Neff
　　　　　　　　　　　　　　　　　　　　　)
DAVID J. BURNETT, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　**REPORT AND RECOMMENDATION**
　　　　　　　　　　　　Defendants.　　　)
_____)

　　　　　　This is a civil rights action brought *pro se* by a state prisoner under the Religious

Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-2(a) and 42 U.S.C. § 1983.  Plaintiff

is currently an inmate at the Parnall Correctional Facility (SMT).  His complaint concerns conditions

of his confinement at the Florence Crane Correctional Facility (ACF).  The event giving rise to this

lawsuit was the April 2006 removal of plaintiff from ACF's kosher diet line.  Plaintiff named seven

State employees as defendants:

　　　　　(1)　　Former Resident Unit Manager (RUM) Connie Paradine;

　　　　　(2)　　Lieutenant Lloyd Blackman;

　　　　　(3)　　Warden Carol Howes;

　　　　　(4)　　Facility Administrator Ron Dutton;

　　　　　(5)　　Area Resident Unit Supervisor (ARUS) David Ford;

　　　　　(6)　　Chaplain Donald Tompkins; and

　　　　　(7)　　David J. Burnett, former Special Activities Coordinator of the Correctional Facilities
　　　　　　　　　Administration (CFA).

Plaintiff alleges that the Chaplain Tompkins's 2006 decision temporarily terminating his participation in ACF's kosher diet line and Coordinator Burnett's 2007 decision denying his application for reinstatement violated his rights under the First Amendment's Free Exercise Clause and his statutory rights under RLUIPA. He complains that defendant Burnett's response to his July 29, 2007 letter was inadequate and that Burnett failed to respond to his August 22, 2007 letter. He alleges that defendants Paradine, Blackman, and Ford violated his rights under RLUIPA when Paradine "promulgated" the 2006 Notice of Intent (NOI) to conduct an administrative hearing, Blackman delivered it to plaintiff, and Ford conducted plaintiff's administrative hearing and recommended that plaintiff's participation in ACF's kosher diet line be terminated. Plaintiff states that Ford did not conduct his hearing within the guidelines specified by Michigan's administrative rules. He makes conclusory allegations that all defendants "conspired" to violate his rights under RLUIPA and that defendant Tompkins's decision removing him from ACF's kosher diet line was in retaliation for unspecified "protected conduct." Plaintiff sued defendants in their individual and official capacities. He requests injunctive and declaratory relief and an award of monetary damages. He asks the court, in its discretion, to exercise supplemental jurisdiction over his state-law claims.

The matter is now before the court on plaintiff's motion for a preliminary injunction regarding his dining hall seating at SMT[1] (docket # 135) and defendants' motions for summary judgment (docket #'s 36, 104). Defendants have filed a brief in opposition to plaintiff's motion for a preliminary injunction (docket # 138) and plaintiff has filed briefs in response to the defendants' motions for summary judgment. (docket #'s 68, 115-16). For the reasons set forth herein, I

---

[1]Plaintiff's motion for a preliminary injunction (docket # 135) was docketed by the Clerk's office as a motion for leave to file a brief in excess of a page limitation.

recommend that plaintiff's motion for a preliminary injunction be denied.  I further recommend that

defendants' motions for summary judgment be granted on all plaintiff's federal claims, and that the

court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-

law claims.  An order implementing these recommendations should be entered.  I further recommend

that a separate judgment be entered in favor of defendants on all plaintiff's federal claims.

## I.       Plaintiff's Motion for a Preliminary Injunction

A preliminary injunction is an extraordinary remedy.  The standards applicable to

a motion for a preliminary injunction are well established.  *See Tennessee Scrap Recyclers Ass'n v.

Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).  Plaintiff's motion for a preliminary injunction (docket

# 135) concerns the dining hall seating arrangements at SMT, plaintiff's current prison.  Defendants

do not work at SMT.  They do not control where SMT's prisoners sit.  The injunctive relief plaintiff

requests is not available against  these defendants.  I recommend that plaintiff's motion for a

preliminary injunction (docket # 135) be denied.

## II.      Defendants' Motions for Summary Judgment

### A.      Summary Judgment Standards

Summary judgment is appropriate when the record reveals that there are no genuine

issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009).

The standard for determining whether summary judgment is appropriate is "whether 'the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d

573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

B.    Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is serving a 2-to-20-year prison sentence in the custody of the Michigan Department of Corrections (MDOC) on his 1996 felony conviction for persuading, inducing, enticing, coercing, or causing, or knowingly allowing, a child to engage in sexually abusive activity for the purpose of producing child sexually abusive material. MICH. COMP. LAWS § 750.145c(2).  He was an inmate at the Florence Crane Correctional Facility (ACF) at all times relevant to this lawsuit.

On April 3, 2006,  Assistant Resident Unit Manager (ARUM) Connie Paradine issued a notice of intent to conduct an administrative hearing (NOI) to determine whether plaintiff should be removed from the list of ACF prisoners being provided with kosher meals, because he had purchased non-kosher food items from ACF's prison's store.  (docket # 37, Ex. A).  Policy Directive 05.03.130 prohibited prisoners receiving a kosher diet at State expense from possessing non-kosher food items:

> A prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats or has in his/her possession, any food item that violates a tenet of his/her designated religion.   The approval shall be rescinded after a hearing is conducted pursuant to Administrative Rule 791.3310 to establish the basis for that removal.   A prisoner may reapply to eat from a religious menu no sooner than 60 days after approval is rescinded the first time and no sooner than one year after approval is rescinded a second time.  A prisoner may reapply to eat from a religious menu only with the approval of the CFA Deputy Director if approval has been rescinded more than twice.

(docket # 1, Ex. B. ¶ WW).  On April 3, 2006, plaintiff received a copy of the NOI from Lieutenant Lloyd Blackman.  (docket # 37, Ex. A).  On April 5, 2006, Area Resident Unit Supervisor (ARUS) David Ford conducted a hearing and issued his report finding that plaintiff's purchase of non-kosher food items from ACF's store on multiple occasions was sufficient to establish plaintiff's

ownership/possession through purchase. (docket # 1, Ex. C). Ford recommended that plaintiff's kosher diet be rescinded.

On April 12, 2006, Chaplain Donald Tompkins drafted a memorandum informing plaintiff and ACF's staff that, effective April 13, 2006, plaintiff would resume eating from the prison's regular menu:

> Please find attached an "Administrative Hearing Report" for Prisoner Courtney # 253078 (C-085)(ACF) from Ms. C. Paradine, RUM. The Administrative Hearing for Prisoner Courtney #253078 concluded [with a recommendation] that he should be removed from the Kosher Menu. Therefore starting on Thursday, April 13, 2006, Prisoner Courtney #253078 is removed from the Kosher Menu and will be eating off the regular menu.

(docket # 1, Ex. E).

On June 14, 2006, plaintiff wrote a letter to Assistant Deputy Warden (ADW) Jensen inquiring about reinstatement. On June 19, 2006, ADW Jensen responded that because it had been plaintiff's second removal from a religious diet, he was not eligible to be reinstated until 2007. (docket # 1, Ex. K). On July 1, 2006, defendant Burnett wrote a memorandum to Warden Howes reiterating that because it had been plaintiff's second removal, he was not eligible to apply to participate in the kosher meal accommodation until on or after April 12, 2007:

> Courtney # 253078, requested accommodation with Kosher menu. It is noted that Courtney has been approved and removed twice from the Kosher meal program. The record indicates he was removed on 6/17/04 and again on 4/12/06. Department policy indicates that after two removals, the prisoner is not eligible to apply for one year. Consequently, Courtney is not eligible to again apply for Kosher meal accommodations until or after 4/12/07. He is not currently approved for Kosher accommodations. He should not be accommodated with Kosher meals.

(docket # 1, Ex. K; docket # 37, Ex. C).

The MDOC's procedure for handling requests by prisoners for special diets is outlined in Paragraph TT of Policy Directive 05.03.150:

A prisoner may eat from a religious menu only with the approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion. To request approval, the prisoner must submit a written request to the Warden, TRV Manager or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager, or designee, as appropriate, of the decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

Plaintiff made a request in 2007 to eat from ACF's kosher diet line. Chaplain Tompkins conducted an interview and forwarded the information he obtained from plaintiff to CFA Special Activities Coordinator Burnett. On April 11, 2007, defendant Burnett denied plaintiff's request:

Courtney # 253078, requested accommodation with the Kosher menu. Courtney has been self-identified as Jewish since July 2003. He had also been self-identified as Jewish from August 2002 to February 2003. This pattern of changing faith groups raises a question regarding his sincere commitment to the practice of the Jewish faith. Courtney has history with the Kosher meal program. He was approved on 9/5/03 and removed on 6/17/04. He was again approved on 8/ 17/04 and removed on 4/12/06. This pattern of behavior strongly suggests Courtney is not sincere about the pursuit of keeping Kosher. Courtney was interviewed by Donald Tompkins, Chaplain. Tompkins reports that Courtney has not been attending Jewish services. Again, this behavior suggests a lack of sincerity. Tomkins reports Courtney was able to provide some basic information about Judaism and keeping Kosher. However, that information was limited. He has been self-identified as Jewish for most of five years. If he had been sincere about pursuing the practices of his faith, it is expected he would be more knowledgeable. While sincerity is based on extrinsic data that is often difficult to ascertain, it appears Courtney has not been sincere about the pursuit of the practice of his faith. Consequently, based on the information available to me, and based on the appearance that he is not sincere about the practice of his faith, Courtney's request for Kosher accommodation is denied at this time. He should not be accommodated with the Kosher menu.

It is understood that denial of admission to a special religious menu is not a failure to recognize faith preference. Requests to declare religious preference and to purchase and possess religious items and to attend religious services must be processed according to Department policy.

(docket # 1, Ex. O; docket # 37, Ex. E).

On July 29, 2007, plaintiff wrote a letter to defendant Burnett requesting a "clarification" regarding the his denial of his request for a kosher diet. (docket # 1, Ex. Q). Defendant Burnett's August 6, 2007 response indicated that there was no reason for him to revisit the April 11, 2007 decision denying plaintiff's request. (*Id.*, Ex. R). Plaintiff was no satisfied with this response, and on August 22, 2007 he wrote a second letter to Burnett (*Id.*, Ex. S) and did not receive a response.

Plaintiff was transferred to SMT. He has been a participant in SMT's kosher diet line since April 2008.

C.    Discussion

1.    Plaintiff's Request that the Court Further Postpone a Decision on the March 17, 2008 Motion for Summary Judgment by Defendants Blackman, Ford, Howes, Dutton, Burnett, and Tompkins

As a threshold matter, I will address plaintiff's argument that a decision on defendants' March 17, 2008 motion for summary judgment (docket # 36) should be further delayed. Plaintiff argues that defendants' motion is "premature for want of discovery." (Plf. Brief at 2, docket # 68).[2] Plaintiff filed this lawsuit on October 29, 2007. He had approximately seventeen months, until March 16, 2009, to conduct any necessary discovery. The court did not enter its order staying discovery until March 16, 2009. (3/16/09 Order, docket # 134). The court found that because

_____

[2]Plaintiff opposed defendant Paradine's September 9, 2008 motion for summary judgment (docket # 104) on the ground that it was filed too late because the Clerk had entered a default against Paradine. (Plf. Brief, docket # 115). Plaintiff's argument is not viable. On March 16, 2009, the court entered an order setting aside defendant Paradine's default. (3/16/09 Order, docket # 133). Plaintiff's remaining argument, that defendant Paradine's motion was not filed with a supporting brief, is frivolous. Paradine's motion for summary judgment is supported by a brief. (docket # 105),

defendants were asserting the defense of qualified immunity, they were entitled to a stay of discovery. (*Id.*). The court's opinion emphasized that there was no basis for granting plaintiff partial relief from the stay because plaintiff never apprised the court of the content of the requests for admissions that he claims to have served:

> Plaintiff has not established grounds for partial relief from the stay of discovery. Immediately after defendants filed their motion for summary judgment, plaintiff served these defendants with a "27-part Request for Admissions." (Defendants' Brief at 1, docket # 55). During the months this motion has been pending, plaintiff has never apprised the court of the specific content of his requests for admissions. Plaintiff's brief in opposition to defendants' motion for a stay of discovery (docket # 62) and his Rule 56(f) affidavit in opposition to defendants' motion for summary judgment (docket # 68, Ex. 13) fail to inform the court of exactly what plaintiff wanted one or more of the defendants to admit. Plaintiff's blanket statement that he made his requests for admissions "for the purpose of preparing an answer to Defendants' Motion for Summary Judgment" (docket # 62 at 1) is insufficient. Plaintiff has not shown that he requires answers to any of his requests for admissions in order to respond to defendants' long-pending motion for summary judgment. He has not shown grounds for partial relief from the stay to which defendants are otherwise entitled. *See Farah v. Wellington*, 295 F. App'x 743, 746-48 (6th Cir. 2008).

(*Id.* at 1-2). During the months since the court entered the above-quoted order, plaintiff has never filed a motion for partial relief from the stay and has never provided the court with a copy of the requests for admission that he claims to have served. The docket sheet indicates that there are no outstanding discovery requests. *See* W.D. MICH. LCIVR 5.3 (requiring that a party file a proof of service with the court when he serves interrogatories, requests for production of documents, or requests for admissions on another party). A decision on defendants' motion for summary judgment is long overdue.

A party opposing a motion for summary judgment has no absolute right to additional time for discovery. *See Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). In order to invoke the

court's discretion in this regard, a party opposing a motion for summary judgment must file a motion

for additional time under Rule 56(f), which provides:

> **(f)  When Affidavits Are Unavailable**.  If a party opposing the motion shows by
> affidavit that, for specified reasons, it cannot present facts essential to justify its
> opposition, the court may:
>
> (1)      deny the motion;
> (2)      order a continuance to enable affidavits to be obtained, depositions to be
> taken, or other discovery to be undertaken; or
> (3)      issue any other just order.

FED. R. CIV. P. 56(f); *see Thornton v. Graphic Commc'n Conference*, 566 F.3d 597, 617 (6th Cir.

2009)("We review a district court's ruling on this motion for abuse of discretion.").  Rule 56(f) is

"not a shield that can be raised to block a motion for summary judgment without even the slightest

showing by the opposing party that his opposition is meritorious."  *Lewis v. ACB Business Servs.,*

*Inc.*, 135 F.3d 389, 409 (6th Cir. 1998).  Rather, the affidavit of the nonmoving party must show how

postponement of a ruling on the motion will enable him to rebut the motion for summary judgment.

*See Allen v. CSX Transp., Inc.*, 325 F.3d 768, 775 (6th Cir. 2003).  It is incumbent upon the

nonmoving party to include within the affidavit a description of the discovery needed and an

affirmative demonstration of how this discovery will allow the nonmoving party to rebut the motion.

*See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir.

2002).  Rule 56(f) establishes a demanding standard.  "If the plaintiff makes only general and

conclusory statements in his affidavit regarding the needed discovery, lacks any details or specificity,

it is not an abuse of discretion for the district court to deny the request."  *Cardinal v. Metrish*, 564

F.3d 794, 797 (6th Cir. 2009).

Plaintiff falls far short of satisfying the requirements of Rule 56(f). The statements in his brief asserting a general need for discovery (Plf. Brief at 2-4, 24, 26, 27, docket # 68) do not satisfy the requirements of Rule 56(f). *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000). Plaintiff's Exhibit 13 is labeled as a Rule 56(f) affidavit, and it states as follows:

1.    On March 26, 2008 Plaintiff filed with Clifton B. Schneider, Counsel for Defendants, his good faith Request for Admissions.

2.    Said Requests for Admissions were directly related to the defenses raised by counsel in Defendants' Motion for Summary Judgment filed on March 17, 2008.

3.    It is Plaintiff's position that should Defendants allowed [sic] this modicum of discovery and answered Plaintiff's Requests for Admissions openly and honestly, it would preclude an order for Summary Judgment by the Court as it would provide evidence upon the record of Defendants' lack of affirmative defenses.

(docket # 68, Ex. 13). There is no proof of service indicating that plaintiff served requests for admissions. He never filed a motion to compel defendants to file a response. He did not attach the purported requests for admissions as an exhibit to his affidavit. His brief is devoid of any discussion of the substance of his requests for admissions. He has not provided the court with a description of how answers to his requests for admissions, assuming *arguendo* that they had been served, would allow plaintiff to rebut the motion for summary judgment by defendants Blackman, Ford, Howes, Dutton, Burnett, and Tompkins on each of the claims he is asserting. Plaintiff has not addressed specific claims against specific defendants. Instead, he offers a general argument that he has not yet had a "full opportunity" to prove his claims:

Because discovery was not granted to Plaintiff by Defendants, see Plaintiff's 56(f) Affidavit (attached as Exhibit 13), the Plaintiff has not had the full opportunity to prove his claims. Until these facts are more clearly articulated, it cannot be determined whether there were any violations to the kosher policy which may have violated plaintiff's First Amendment rights, and whether any violations were intentional or negligent. Defendant's [sic] motion for summary judgment on the issue of qualified immunity should not be decided

until Plaintiff has had the opportunity for discovery to determine that such violations were knowing and intentional.

Plaintiff's Complaint alleges claims that require proof of wrongful motive regarding Defendants intentionally depriving Plaintiff of First Amendment rights to a kosher diet, therefore, Plaintiff's Complaint should not be dismissed based on qualified immunity at this time.

(Plf. Brief at 27). General pleas for more discovery, unsupported by specific facts, are insufficient. *See Cacevic*, 226 F.3d at 489; *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1388-89 (Fed. Cir. 1989). Plaintiff's argument that he needs to discover whether there were any other violations of kosher policy does not provide a basis for further postponing a decision. A violation of state policy alone is insufficient to support a constitutional claim against any defendant. Plaintiff makes a vague allusion to requiring discovery to establish the state of mind component of his First Amendment claims. The bottom line is that plaintiff has not shown how any of his unspecified requests for admissions would establish any defendant's state of mind on any of his First Amendment claims. I find that plaintiff has not established grounds under Rule 56(f) for any further delay in adjudicating defendants' long-pending, March 17, 2008 motion for summary judgment.

2.      Plaintiff's Claims for Declaratory and Injunctive Relief are Moot

Plaintiff is an inmate at SMT. He is participating in SMT's kosher diet line. Plaintiff's claims for declaratory and injunctive relief against defendants are moot. *See Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

3.      Eleventh Amendment Immunity

(a)     Constitutional Claims

Plaintiff's constitutional claims for monetary damages against defendants in their official capacities are barred by Eleventh Amendment immunity. Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006). A suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment generally[3] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's constitutional claims for monetary damages against defendants in their official capacities.

---

[3] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)(*en banc*).

(b)    Statutory RLUIPA Claims

(1)    Sovereign Immunity

Defendants seek dismissal of plaintiff's statutory RLUIPA claims for monetary damages against defendants in their official capacities on Eleventh Amendment immunity grounds. (Defendants' Brief at 7-8, docket # 37).  The Sixth Circuit's decision in *Cardinal v. Metrish*,  564 F.3d 794, 800-01 (6th Cir. 2009) is controlling.  The Eleventh Amendment bars plaintiff's RLUIPA claims for monetary relief against defendants in their official capacities.

(2)    RLUIPA Claims for Monetary Damages Against Defendants in Their Individual Capacities

Plaintiff has sued defendants in their individual capacities for damages under RLUIPA.  The Sixth Circuit "has not ruled on whether RLUIPA authorizes suits for monetary damages against state officials in their individual capacities." *Heard v. Caruso*, No. 08-1170, 1179, 1180, 2009 WL 2628293, at * 10 n. 5 (6th Cir. Aug. 27, 2009).

RLUIPA's section 3 provides that "[a] person may assert a violation of this chapter as a claim . . . in a judicial proceeding and obtain appropriate relief against a government."[4] 42 U.S.C. § 2000cc-2(a).  The question presented is whether  "appropriate relief" under this statute includes an action against a defendant in her individual capacity for monetary damages.  I find that RLUIPA, as an exercise of Congress's power under the Spending Clause, does not provide a cause of action for damages against defendants in their individual capacities.

_____

[4]The term "government" is defined in RLUIPA as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) a branch, department, agency, instrumentality, or official of an entity listed in clause; and (iii) any other person acting under color of State law."  42 U.S.C. § 2000cc-5.

The Sixth Circuit, in response to a "facial challenge" to section 3 of RLUIPA, has upheld the statute as a valid exercise of Congress's power under the Spending Clause, Article I, section 8, clause 1 of the Constitution "to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States." *Cutter v. Wilkinson*, 423 F.3d 579, 590 (6th Cir. 2005). A finding that a statute is facially valid is an extremely narrow judicial determination. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005). Although the Sixth Circuit's holding that section 3 of RLUIPA is a facially valid exercise of Congress's Spending Clause power is narrow in its scope, the holding has significant consequences for the remedies available to an incarcerated plaintiff seeking relief under the statute.

An exercise of Congress's spending power is in the nature of a contract:

> Turning to Congress' power to legislate pursuant to the spending power, our cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States. Unlike legislation enacted under § 5, however, legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)(internal citations omitted). RLUIPA's "contractual nature" limits the scope of remedies available under the statute. *See Gebser v. Largo Vista Independent Sch. Dist.*, 524 U.S. 274, 287 (1998). When Congress attaches conditions to the award of federal funds under its spending power (as it has in Title IX and Title VI), the Supreme Court "examine[s] closely the propriety of private actions holding the recipient liable

-15-

in monetary damages for noncompliance with the condition. Our central concern in that regard is with ensuring that the receiving entity of federal funds [has] notice that it will be liable for a monetary award." *Gebser*, 524 U.S. at 287 (internal citations and quotation marks omitted).

Defendants are not "recipients" of federal funds and cannot properly be held liable for monetary damages under Congress's Spending Clause powers:

> The Government's enforcement power may only be exercised against the funding recipient, see § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power. *See National Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 467, n. 5, 119 S.Ct. 924, 929, n. 5, 142 L.Ed.2d 929 (1999) (rejecting suggestion "that the private right of action available under ... § 1681(a) is potentially broader than the Government's enforcement authority").

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999); *see National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999). Every federal appellate court that has addressed the issue has held that RLUIPA, as an exercise of Congress's Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities. *See Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 187-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1274 (11th Cir. 2007). It is highly probable that the Sixth Circuit will join the Fourth, Fifth, Seventh, and Eleventh Circuits and hold that RLUIPA does not provide a cause of action for monetary damages against a state employees in their individual capacities for monetary damages. Accordingly, I find that defendants are entitled to judgment in their favor as a matter of law on all plaintiff's RLUIPA claims for damages against defendants in their individual capacities.

4.    Claims Based on Plaintiff's Correspondence with Defendant Burnett

Plaintiff's claims arising from dissatisfaction with Burnett's response to plaintiff's July 29, 2007 letter (docket # 1, Ex. Q) and Burnett's failure to respond to an August 22, 2007 letter (*Id.*, Ex. S) are not of constitutional dimension. Plaintiff did not have a constitutionally protected right to a response to his correspondence. *See Harris v. Westchester County Dep't of Corrections*, No. 06-Civ.-2011(RJS), 2008 WL 953616, at * 9 (S.D.N.Y. Apr. 3, 2008); *Hodge v. United States*, No. 03-cv-1622, 2007 WL 2571938, at * 13 (M.D. Pa. Aug. 31, 2007); *Fogle v. Pierson*, No. 05-cv-01-211-PSF-CBS, 2007 WL 274558, at * 9 (D. Colo. Jan. 29, 2007); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that the allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (collecting cases).

5.    Claims Based on Alleged Violations of State Procedure

Plaintiff's claims that defendants Paradine, Blackman, and Ford did not follow MDOC procedures (Compl., ¶¶ 2-4, 10-11) are not federal claims. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

6.    Conspiracy Claims

Plaintiff's vague and conclusory allegations of a "conspiracy" among all defendants to violate his civil rights fail to state a claim upon which relief can be granted. *See Center for Bio-*

*Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007); *Gutierrez v. Lynch*, 826 F.2d 1534, 1358-39 (6th Cir. 1987); *accord*, *Moldowan v. City of Warren*, 2009 WL 2497969, at *32 (6th Cir. Aug. 18, 2009).

       7.      First Amendment Claims

       (a)      Free Exercise Clause Claims

       The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The latter clause is the Free Exercise Clause. The Supreme Court has held that by incorporation through the Fourteenth Amendment, the Free Exercise Clause applies to the States. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). A prisoner retains only those First Amendment freedoms which are "'not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system.'" *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see Turner v. Safley*, 482 U.S. 78 (1987). Lawful incarceration legitimately requires the retraction or withdrawal of many rights and privileges as a necessary consequence of society's need to deter and punish crime. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. at 822-23. "The Supreme Court has held that in most circumstances, prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are

needed to preserve internal order and discipline and to maintain institutional security.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court held that the constitutionality of prison regulations that infringe upon a prisoner's rights under the First Amendment must be evaluated under the test of *Turner v. Safley*, 482 U.S. 78 (1987). The Supreme Court noted that it is well established that lawful incarceration legitimately requires restrictions on many rights and privileges as a necessary consequence of a criminal conviction. *O'Lone*, 482 U.S. at 348.

> [S]uch a standard is necessary 'if prison administrators ..., and not the courts [are] to make the difficult judgments concerning institutional operations.' *Jones v. North Carolina Prisoner's Union*, 433 U.S. [119,] 128, 97 S.Ct. 2532, 53 L.Ed.2d 629 [ ( 1977) ]. Subjecting day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby 'unnecessarily perpetuat[ing] the involvement of the federal courts in the affairs of prison administration.' *Procunier v. Martinez*, 416 U.S. [396], 407, 94 S.Ct. 1800, 40 L.Ed.2d 224 [ (1974) ].

*Turner*, 482 U.S. at 89. The familiar *Turner* factors are: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact that accommodation of the asserted constitutional right will have on other guards and inmates; and (4) whether there are other readily available alternatives at a *de minimis* cost to valid penological interests. Turner, 482 U.S. at 89-91. The *O'Lone* opinion closed with the statement, "We take this opportunity to reaffirm our refusal, even where claims are made under the

First Amendment, to substitute our judgment on difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison." 482 U.S. at 353 (internal citation omitted).

In this instance, there is a valid, rational connection between the policy directive requiring a prisoner to obtain approval from the CFA's Special Activities Coordinator before he can eat a special religiously-based diet, the removal of prisoners from the kosher meal program when they are determined to be in possession of non-kosher food items, and the legitimate governmental interests put forward to justify the State's policies. *See Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir.2003). The legitimate governmental interests are budgetary and security interests. Prisons need not respond to particularized religious dietary requests to comply with the First Amendment. *See Kahey v. Jones*, 836 F.2d 948 (5th Cir.1988). There is a legitimate governmental interest in running a simplified food service rather than a full-scale restaurant. *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007). Consequently, a prison may refuse in certain circumstances to provide religious-based diets, even where the prisoners are sincere in their requests. 486 F.3d at 122. Prison security is not only a legitimate governmental interest, it is recognized as a compelling governmental interest. *See Hoevenaar v. Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2005); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir.2004) ("Institutional security is the most compelling governmental interest in a prison setting, and security is particularly important in dealing with group activities because of the potential for riots and the extensive damage resulting therefrom.").

The Sixth Circuit rejected a virtually identical prisoner claim in *Russell v. Wilkinson*. Prisoner Russell alleged a violation of his First Amendment rights when he was denied kosher meals after prison officials determined that Russell had purchased non-kosher food from the inmate

commissary. The Sixth Circuit held, "As the denial of kosher meals was based on Russell's obvious actions in not observing kosher food requirement outside meals, [defendant] had a legitimate penological interest in discontinuing Russell's request. That legitimate penological interest concerns the maintenance of prison discipline in the facility."[5] 79 F. App'x at 177. Plaintiff has not disputed that he retained alternative means for practicing his Jewish faith. The impact that accommodation of the asserted constitutional right would have on guards and inmates is obvious: it makes an already dangerous environment even more dangerous and imposes an unwarranted financial burden on the State of Michigan. There are no other readily available alternatives at a *de minimis* cost to valid penological interests. The Actions of defendants Tompkins and Burnett did not violate plaintiff's First Amendment rights under the Free Exercise Clause. *See Russell*, 79 F. App'x at 177; *see also Berryman v. Granholm*, No. 07-2081, 2009 WL 2461099, at * 4 (6th Cir. Aug. 12, 2009); *accord Peterson v. Price*, No. 5:06-cv-106, 2007 WL 2893009, at * 6 (D. Nev. Sept. 28, 2007) (removal of a federal prison inmate from a kosher meal program because the inmate had violated the terms of the program by purchasing non-kosher items from the food commissary "was reasonably related to legitimate penological interests.").

The State of Michigan expends significant financial and administrative resources in attempting to accommodate prisoners' religious beliefs by providing them with special diets that do not offend those religious beliefs. The State's resources are finite, and prisoner demands for

---

[5]In *Russell*, the Sixth Circuit held that a prisoner does not possess any protected liberty or property interest in participation in a Kosher Meal Program, that discontinuation of the prisoner's participation in such a program was not an atypical or significant hardship in relation to the ordinary incidents of prison life, and that prison officials were entitled to summary judgment on the prisoner's procedural due process claims. 79 F. App'x at 178; *see also Treece Burnett*, No. 4:06-cv-110, 2007 WL 2815020, at * 7 (W.D. Mich. Sept. 25, 2007) (removal of prisoner from Kosher Meal Program "did not constitute the deprivation of a constitutionally protected liberty or property interest").

specialized diets and food preparation are not. Michigan continues to struggle with the changing economy and billion dollar budget deficits. Among the recent extraordinary budget cuts by the State of Michigan are the lay-off of more than 100 state police troopers and the requirement that most state employees take unpaid furloughs. *See* Exec. Order No. 2009-22. The State of Texas recently found the financial and administrative demands posed by prisoner requests for special religiously-based diets to be overwhelming, and it declined to provide special meals or the equipment necessary for preparing them (including kosher meals), in favor of simply providing pork-free and vegetarian alternatives to the regular food line. The Fifth Circuit, applying the *Turner* test, upheld the Texas policy.[6] *See Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir.2007). The court found that there was "a logical connection between the prison policy on inmate diet and the legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* Granting requests for specialized diets would be expensive, diverting resources from other penological goals. It would "place undue costs and administrative burdens on the prison system because of the likelihood of proliferation of such requests and the concomitant need to meet multiple distinct dietary requests."[7] *Id.* Defendants Tompkins and Burnett are entitled to judgment in their favor as a matter of law on plaintiff's First Amendment claims under the Free Exercise Clause.

---

[6]The Fifth Circuit also upheld the policy against a RLUIPA challenge, finding the policy to be the least restrictive means of furthering compelling governmental interests. 486 F.3 d at 124-26.

[7]*See, e.g., Keesh v. Smith*, No. 9:04-cv-779, 2007 WL 2815641, at * 18 (N.D.N.Y. Sept.25, 2007) (prisoner Keesh purported to be a member of the "Tulakeesh" faith, asserting that his religious beliefs required him to have fixed diets of certain foods on certain dates, and that his food be prepared by a "Tulakeesh adherent").

(b)	Retaliation Claim

Plaintiff alleges that defendant Tompkins removed him from ACF's Kosher diet line in retaliation for unspecified "protected conduct." On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thadeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 (6th Cir. 2006). Plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). On the present record, no reasonable trier of fact could find in plaintiff's favor on the first and third elements of a First Amendment retaliation claim against defendant Tompkins.

8.	RLUIPA Claims

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) states:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the

-23-

existence of a substantial burden rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007); *see Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733 (6th Cir. 2007); *see also Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) ("RLUIPA . . . requires the complainant to show that his religious exercise was substantially burdened."). At the summary judgment stage, the plaintiff must present evidence of a substantial burden, and "unreasoned say-so" does not suffice. *See Gelford v. Frank*, No. 07-3638, 2008 WL 896792, at *3 (7th Cir. Mar. 12, 2008).

RLUIPA does not define the phrase "substantial burden," and the Supreme Court "has not yet defined 'substantial burden' as it applies to RLUIPA." *Living Water*, 258 F. App'x at 733. In *Living Water*, the Sixth Circuit declined to establish a "bright line test" for determining a "substantial burden." *Id.* at 737. It held that the Supreme Court's Free Exercise jurisprudence provides the appropriate analytical framework. *Id.* at 733-34. The Sixth Circuit emphasized that in the Free Exercise context, the Supreme Court has made clear that the "substantial burden' hurdle is high." *Id.* at 734. "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] substantial burden must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A substantial burden is not established because the government's action makes the religious exercise more difficult or expensive. *Living Water*, 258 F. App'x at 739; *see Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813-14 (8th Cir. 2008). Plaintiff possessed alternative means of practicing his faith. He has not offered any alternative that would fully accommodate his asserted rights at a *de minimis* cost to the legitimate state interests that gave rise to the restrictions specified in Policy

Directive 05.03.150. I find that no reasonable trier of fact could find in plaintiff's favor on the "substantial burden" component of his RLUIPA claims against defendants.

9. Qualified Immunity

Plaintiff seeks an award of damages against defendants in their individual capacities under RLUIPA and section 1983. Defendants have asserted the defense of qualified immunity. Plaintiff's brief in response to defendant Paradine's motion for summary judgment (docket # 115) does not address the qualified immunity issue. His response to the motion for summary judgment by the other defendants is a patently meritless argument that the MDOC's employee handbook and its policy directives "clearly established" his federal rights. (docket # 68 at 21-24). Further, plaintiff addresses defendants collectively rather than attempting to demonstrate how the actions of each defendant violated his clearly established federal rights. Upon review, I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims against them in their individual capacities on the alternative basis of qualified immunity.

"The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "govern-ment officials performing discretionary functions, generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), endorsed a two-prong analysis for addressing qualified immunity issues. The first prong is whether the plaintiff has alleged and supported with evidence[8] facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 550 U.S. 372, 376 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201. Judges are permitted to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009). Here, the sequence endorsed by the Court

---

[8]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).

in *Saucier* is appropriate. The first prong of the qualified immunity was addressed in the preceding sections of this report and recommendation.

Plaintiff falls well short of satisfying his burden under the second prong of demonstrating that the right he claims each defendant violated was "clearly established" such that a reasonable official in the each defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right. 533 U.S. at 201.

The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001).

"Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[9] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005). The court must focus on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For

---

[9]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427.

(a)     First Amendment Free Exercise Clause Claims

The Sixth Circuit's 2003 decision in *Russell v. Wilkinson* clearly established that no First Amendment violation occurs when a prisoner is removed from a prison's kosher diet line because he possessed non-kosher food. *Russell v. Wilkinson*, 79 F. App'x 175 (6th Cir. 2003); *see Berryman v. Granholm*, No. 07-2081, 2009 WL 2461099, at * 4 (6th Cir. Aug. 12, 2009). Defendants are entitled to qualified immunity on plaintiff's First Amendment Free Exercise Clause claims based on 2006 decision terminating his kosher diet accommodation. Defendant Burnett is entitled to qualified immunity on his 2007 decision denying plaintiff's request for a special diet. Among other things, Burnett observed that plaintiff had twice been removed from the kosher diet line and that plaintiff had not been attending Jewish services. Plaintiff has not presented the court with any authority clearly establishing a First Amendment right to receive the accommodation of kosher meals under similar circumstances.

(b)     RLUIPA Claims

Assuming that a cause of action for damages against defendants in their individual capacities exists under RLUIPA, defendants would nonetheless be entitled to qualified immunity on plaintiff's RLUIPA claims because the law on what constitutes a "substantial burden" on a prisoner's exercise of his faith was not clearly established when the defendants acted.  It is not sufficient for plaintiff to simply invoke the existence of the statute, because under the second prong of the qualified immunity analysis, "the right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant sense."  *Lyons*, 466 F.3d at 428.  Thus, the relevant inquiry is whether a reasonable chaplain in defendant's position would have understood that failure to respond and accede to plaintiff's demands would impose a substantial burden on the exercise of plaintiff's Jewish faith in violation of plaintiff's clearly established federal statutory rights under RLUIPA.  "The U.S. Supreme Court has not yet defined 'substantial burden' as it applies to RLUIPA.  Neither does the statute itself contain any definition of the term."  *Living Water Church of God*, 258 F. App'x at 733.  The Sixth Circuit did not address the issue of what constitutes a "substantial burden" under RLUIPA until its December 2007 decision in  *Living Water*.  258 F. App'x at 732- 42.  The law regarding what constituted a "substantial burden" was not clearly established during the period from April 2006 through August 2007 when the defendants acted.  I find that defendants are entitled to summary judgment on plaintiff's RLUIPA claims against defendants in their individual capacities for monetary damages on the alternative basis of qualified immunity.

F.    Supplemental Jurisdiction

Plaintiff asks the court to exercise jurisdiction over purported state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, Nos. 577 F.3d 701,709 (6th Cir. 2009); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). There is no reason in this case to depart from the general rule.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's motion for a preliminary injunction (docket # 135) be denied. I further recommend that defendants' motions for summary judgment (docket #'s 36, 104) be granted on all plaintiff's federal claims, and that the court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims. An order adopting the above-referenced recommendations should be entered. I further recommend that a separate and final judgment be entered in favor of defendants on all plaintiff's federal claims.

Dated:  October 5, 2009              /s/  Joseph G. Scoville
                                     United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fᴇᴅ. R. Cɪᴠ. P. 72(b). All objections and responses to objections are governed by W.D. Mɪᴄʜ. LCɪᴠR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474

U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).